IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JEFFREY S., )
 )
    Plaintiff, )
 )  No. 18 C 6491
v. )
 )  Magistrate Judge Gabriel A. Fuentes
ANDREW M. SAUL, Commissioner )
of Social Security,[1] )
 )
    Defendant. )

## MEMORANDUM OPINION AND ORDER[2]

Plaintiff, Jeffrey S.,[3] applied for Disability Insurance Benefits and Social Security Income in July and November 2015, respectively, alleging he became disabled on October 30, 2014. (R. 183-88.) After a hearing, an administrative law judge ("ALJ") issued a written opinion denying his applications for benefits. (R. 15-25.) The Appeals Council denied Plaintiff's request for review

---

[1] The Court substitutes Andrew M. Saul for his predecessor, Nancy A. Berryhill, as the proper defendant in this action pursuant to Federal Rule of Civil Procedure 25(d) (a public officer's successor is automatically substituted as a party).

[2] On December 27, 2018, by consent of the parties and pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1, this case was assigned to a United States Magistrate Judge for all proceedings, including entry of final judgment. (D.E. 9.) On May 31, 2019, this case was reassigned to this Court for all proceedings. (D.E. 17.)

[3] The Court in this opinion is referring to Plaintiff by his first name and first initial of his last name in compliance with Internal Operating Procedure No. 22 of this Court. IOP 22 presumably is intended to protect the privacy of plaintiffs who bring matters in this Court seeking judicial review under the Social Security Act. The Court notes that suppressing the names of litigants is an extraordinary step ordinarily reserved for protecting the identities of children, sexual assault victims, and other particularly vulnerable parties. *Doe v. Vill. of Deerfield*, 819 F.3d 372, 377 (7th Cir. 2016). Allowing a litigant to proceed anonymously "runs contrary to the rights of the public to have open judicial proceedings and to know who is using court facilities and procedures funded by public taxes." *Id.* A party wishing to proceed anonymously "must demonstrate 'exceptional circumstances' that outweigh both the public policy in favor of identified parties and the prejudice to the opposing party that would result from anonymity." *Id.*, citing *Doe v. Blue Cross & Blue Shield Unites of Wis.*, 112 F.3d 869, 872 (7th Cir. 1997). Under IOP 22, both parties are absolved of making such a showing. Put to such a showing here, a party may well be able to demonstrate that suppressing the surname of the plaintiff inflicts little or no prejudice upon the government defendant, but establishing that the circumstances favoring privacy are so exceptional as to outweigh the public policy in favor of identified parties would be more challenging. In any event, the Court is abiding by IOP 22 subject to the Court's concerns as stated. The Court's understanding is that the claimants are not anonymous litigants, in that their names in all of these matters brought for judicial review under the Social Security Act are otherwise available upon a review of the public docket.

of the ALJ's decision (R. 1), making the ALJ's decision the final decision of the Commissioner. *Jozefyk v. Berryhill*, 923 F.3d 492, 496 (7th Cir. 2019). Plaintiff has filed a motion to reverse or remand the Commissioner's decision denying his applications for benefits (D.E. 14), and the Commissioner has filed a cross-motion asking the Court to affirm the decision. (D.E. 24.) The matter is now fully briefed. For the following reasons, the Court grants Plaintiff's motion to remand and denies the Commissioner's motion to affirm.

I. **Administrative Record**

Plaintiff was diagnosed with colon cancer on September 21, 2011, and on September 30, 2011, he successfully underwent resection surgery to remove the part of his large bowel affected by the cancer. (R. 303.) From November 21, 2011 to April 23, 2012, Plaintiff received 12 cycles of chemotherapy treatment.[4] (*Id.*) While receiving chemotherapy, Plaintiff experienced minimal intermittent peripheral neuropathy.[5] (R. 528.) In June 2012, however, Plaintiff told his doctor that he got into a car accident when peripheral neuropathy caused his feet to jerk unexpectedly and press on the gas pedal, and Plaintiff has not driven since. (R. 244, 247.) In September 2012, Plaintiff was referred to a neuro-oncology clinic due to constant tingling in his feet. (R. 546-48.)

Throughout 2013 and 2014, Plaintiff's internist prescribed gabapentin (for nerve pain) to relieve his symptoms, but he continued to report throbbing sensations, sharp and shooting pains, and persistent tingling in his feet radiating up his calf. (R. 1054-56.) On examination, light touch elicited tingling in his feet and calves, and he had loss of proprioception (sense of self-movement) in his big toes. (R. 1055.) In September 2013, Plaintiff reported that his peripheral neuropathy had

---

[4]Although he is still considered high risk, Plaintiff's cancer has been in remission since then.

[5]Peripheral neuropathy means that the peripheral nerves -- those that carry signals to and from the brain and spinal cord to the rest of the body -- do not work properly. https://medlineplus.gov/ency/article/000593.htm (last visited Oct. 8, 2019). It may cause weakness, numbness and pain, usually in the hands and feet. https://www.mayoclinic.org/diseases-conditions/peripheral-neuropathy/symptoms-causes/syc-20352061 (last visited Oct. 8, 2019).

improved with gabapentin, though it caused him some fatigue. (R. 300, 1062.) In January 2014, Plaintiff reported some improvement in the numbness from his peripheral neuropathy, particularly in his hands, but he continued to note tingling and sharp pains in his feet. (R. 303.) In April and May 2014, Plaintiff received acupuncture treatment, which lessened the tingling and pain in his legs and feet; however, he could not continue that treatment due to insurance denial. (R. 310-12.)

From 2012 through October 2014, Plaintiff continued to work 12 hours a day, three times a week. (R. 318.) In a Social Security report, Plaintiff listed his job title as a "production analyst." (R. 222.) Plaintiff explained that his job was also sometimes called a mainframe or computer operator, but that regardless of the title, his job involved sitting in front of a computer and typing. (R. 37-39.) Plaintiff testified at his hearing that while sitting at work, his feet would swell, throbbing, sharp, electric shocks would run up his legs, and he began typing slower and making mistakes he would not normally make. (R. 53-54.) Nevertheless, he never missed a day of work, and he worked a lot of overtime. (*Id.*) Plaintiff did not inform his employer of his neuropathy problems, and he reported that he lost his job in October 2014 because he was "unable to complete" a new work procedure. (R. 221, 226.) In August 2015, Plaintiff wrote in a function report that he could do laundry and vacuum, but that symptoms from neuropathy in his feet affected all of his activities involving standing or walking for extended periods. (R. 245-46, 249.)

On September 21, 2015, Plaintiff underwent a state agency consultative examination. He reported that his neuropathy caused throbbing, pulsing, stinging pain in his feet so that he could not stand very long, but his hands were "feeling better" and were "okay now." (R. 404-05.) Examination revealed decreased pinprick sensation in both feet. (R. 406.) On October 5, 2015, a non-examining state agency physician opined that Plaintiff's peripheral neuropathy was not a severe impairment (R. 77-78), and this opinion was affirmed on reconsideration (R. 85-86).

Plaintiff reported persistent neuropathy symptoms at follow-up visits to his internist in December 2015 and June 2016, despite taking gabapentin. (R. 412-13, 903.) On June 22, 2016, Plaintiff visited a neuro-oncology clinic for the first time in several years. Plaintiff described feeling constant tingling and electric shock sensations in both feet and "rare, intermittent" upper extremity neuropathy symptoms. (R. 908.) On examination, Plaintiff perceived light touch as tingling in his feet, shins and hands, and he had diminished proprioception in his big toes. (R. 909.) The physician opined Plaintiff had "not really had a fair trial of multiple neuropathy meds," so he increased Plaintiff's dose of gabapentin and discussed alternative therapies such as topical creams and acupuncture. (R. 910.)

In August 2016, a neuro-oncology examination showed no change in Plaintiff's symptoms, and the nurse practitioner further increased his gabapentin dose. (R. 916-17.) On October 4, 2016, Plaintiff reported persistent numbness, tingling, electric shock sensation and throbbing in his feet, and he stated that his feet swelled after sitting a long time. (R. 637.) On examination, Plaintiff again had tingling in his feet, shins and hands and diminished proprioception in his big toes. (R. 641.) His dose of gabapentin was again increased. (R. 642.) In November 2016, Plaintiff's symptoms flared, which he believed was due to being on his feet for long periods and being less consistent with gabapentin dosing. (R. 646-47.) He reported difficulty walking but his coordination and gait remained normal. (*Id.*) His sensory exam was unchanged from the prior month. (R. 648.)

On December 14, 2016, Plaintiff reported at a neuro-oncology visit that his neuropathy symptoms had flared again, which he attributed to being on his feet for long periods during preparations for moving to Arizona. (R. 1084.) He also stated that typing, cold weather and lifting, wrapping and carrying objects had worsened the neuropathy in his hands to the point that he almost dropped a laundry basket due to cramping and diminished sensation in his hands. (*Id.*) The nurse

4

practitioner wrote: "The difficulty with his hands has been ongoing since 2012 according to Mr. [S.] but this is the first time he has thought to mention it as the pain in his feet is the predominant [symptom]." (*Id.*) His sensory examination remained unchanged from November. (R. 1086.) The nurse did not expect Plaintiff's neuropathy to improve with time. (R. 1088.)

In May 2017, Plaintiff returned from Arizona and visited the neuro-oncology clinic. (R. 1093.) Plaintiff reported that his symptoms were "relatively static" since his last visit; they were "most noticeable and bothersome in his feet and legs but also happen[ed] in his hands," and he had trouble sleeping due to his symptoms. (*Id.*) His sensory examination remained unchanged from December 2016. (R. 1094-95.) Plaintiff's treater advised him that weight loss and lifestyle changes were his best chances to prevent worsened neuropathy symptoms. (R. 1093, 1097.) Plaintiff was considered obese at 5'8" tall and 221 pounds (R. 1098); his weight had stayed essentially the same since 2015. (*see* R. 405, 411).

## II. Evidentiary Hearing

On July 14, 2017, Plaintiff testified at his hearing before the ALJ that even with gabapentin, stabbing pain in his legs, feet and hands made it hard for him to sleep at night, and he was exhausted during the day. (R. 44-45, 55-56.) He had trouble holding things for a substantial amount of time due to a loss of sensitivity, tingling and cramping in his hands, which made things like cooking, cutting steak, buttoning, zipping, using a mouse and tying shoelaces difficult. (R. 45-47, 58.) In addition, Plaintiff testified that he had to extend his legs when sitting because the pressure on his heels and feet caused them to swell. (R. 50, 62-63.) He also stated that he could not sit still for a long time and had to keep moving from side to side. (R. 62-63.)

The vocational expert ("VE") classified Plaintiff's past work as a systems analyst, which is a sedentary and skilled job. (R. 65.) The ALJ provided the VE with hypothetical individuals

5

limited to sedentary, light or medium work with occasional bilateral operation of foot controls; occasional balancing, stooping, crouching, kneeling, crawling and climbing ramps and stairs; frequent performance of gross and fine manipulation; and no climbing ladders, ropes or scaffolds or exposure to extreme cold. (R. 67-69.) The VE testified these individuals could perform Plaintiff's past work both as described in the Dictionary of Occupational Titles ("DOT") and as Plaintiff actually performed it, as well as other jobs in the national economy. (*Id.*) However, if the individuals were limited to occasional gross and fine manipulation, they would not be able to perform Plaintiff's past work or any other work in the national economy. (R. 68-70.) In addition, all work would be precluded for an individual who could only sit for two hours a day or who would be off-task for two hours a day due to fatigue. (R. 70.)

### III. ALJ's Decision

On November 13, 2017, the ALJ issued a written opinion finding that Plaintiff was not disabled from his alleged onset date of October 30, 2014 through the date of the decision. (R. 16.) At Step One of the five-step sequential evaluation, the ALJ determined Plaintiff had not engaged in substantial gainful activity since his alleged onset date. (R. 17.) At Step Two, the ALJ found Plaintiff had the severe impairments of colon cancer post-chemotherapy, peripheral neuropathy and obesity, but at Step Three, he found that Plaintiff's impairments did not meet or equal the severity of a listed impairment. (R. 17-18.) The ALJ assigned Plaintiff a residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), except he could: never climb ladders, ropes or scaffolds, or be subjected to concentrated exposure to extreme cold; occasionally operate foot controls bilaterally, balance, stoop, kneel, crouch, crawl and climb ramps and stairs; and frequently, but not constantly, perform gross and fine manipulation. (R. 18-19.)

The ALJ found that Plaintiff's impairments could reasonably be expected to produce the symptoms he alleged, but that his statements concerning the intensity, persistence and limiting effects of these symptoms were "not entirely consistent with the medical evidence and other evidence in the record." (R. 20.) The ALJ acknowledged that Plaintiff's "longitudinal medical history demonstrates persistent symptoms of neuropathy that result in some functional limitations," particularly in Plaintiff's feet, which led Plaintiff to stop driving. (R. 22-23.) The ALJ also noted that the state agency examination showed Plaintiff had decreased sensation in both feet, and that "exam findings throughout 2016 consistently document decreased proprioception in the claimant's bilateral great toes." (R. 22.)

However, the ALJ found "the record lacks corresponding objective clinical findings to support [Plaintiff's] allegation" that he had difficulty typing due to neuropathy in his hands because clinical findings "d[id] not indicate more than slightly decreased sensation in the claimant's hands," and there was no medical evidence showing Plaintiff's condition worsened at the time of his alleged onset date. (R. 22-23.) In addition, the ALJ noted that "it appears that the claimant worked for several years after the onset of his neuropathy." (R. 23.) The ALJ also found the record showed Plaintiff took his prescribed medication inconsistently at times, "which suggests that his symptoms were not so limiting as to prompt him to follow prescribed medication regimens." (*Id.*) Furthermore, the ALJ found that the absence of any physician opinions asserting Plaintiff was precluded from working "suggest[ed] his treating physicians do not feel the limiting effects of his impairments are severe enough to preclude him from working." (R. 23.)

The ALJ explained that he limited Plaintiff to light work because he had a "consistently normal gait and did not use an assistive device," and sedentary work was not appropriate "based on the claimant's allegations that he experienced swelling in his feet if he sat for prolonged

7

periods." (R. 22.) The ALJ stated that "[l]ight work would likely result in more position changes throughout the day between sitting, standing and walking and thus, is an appropriate physical demand level in this case," and "[t]here was no evidence . . . to suggest that the claimant would not be able to lift up to twenty pounds occasionally or ten pounds frequently." (R. 23.) The ALJ also stated that he took Plaintiff's obesity into account by limiting him to light rather than more strenuous work "even though no treating or examining medical source has specifically attributed additional or cumulative limitations [due] to [his] obesity." (R. 18, 23.)

At Step Four, the ALJ held that based on the VE's testimony, Plaintiff's RFC would allow him to perform his past relevant work as a systems analyst, which was classified as sedentary work and performed at the sedentary level by Plaintiff. (R. 23.) The ALJ stated that Plaintiff could perform this work as it was actually and generally performed. (R. 24.) Alternatively, at Step Five, the ALJ held that other jobs existed in the national economy that Plaintiff could perform. (R. 24-25.) Thus, the ALJ held Plaintiff was not disabled under the Social Security Act. (R. 25.)

## IV. Analysis

The Court's review of the ALJ's decision "is deferential; we will not reweigh the evidence or substitute our judgment for that of the ALJ." *Summers v. Berryhill*, 864 F.3d 523, 526 (7th Cir. 2017). "The ALJ's decision will be upheld if supported by substantial evidence, which means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Jozefyk*, 923 F.3d at 496 (internal citations and quotations omitted). "An ALJ need not address every piece of evidence, but he must establish a logical connection between the evidence and his conclusion," *i.e.*, "build an accurate and logical bridge" between the evidence and his conclusion. *Lanigan v. Berryhill*, 865 F.3d 558, 563 (7th Cir. 2017). "Where substantial evidence supports the ALJ's disability determination, we must affirm the decision even if reasonable minds could differ

concerning whether the claimant is disabled." *L.D.R. by Wagner v. Berryhill*, 920 F.3d 1146, 1152 (7th Cir. 2019) (internal citations and quotations omitted).

Plaintiff makes several arguments for reversal and remand of the ALJ's decision. The Court agrees with Plaintiff's contention that the ALJ's analysis of the neuropathy in his feet was inconsistent and created errors in the ALJ's decision that necessitate remand. (D.E. 15: Pl.'s Mem. at 7-9, 11-12.)

### A. Plaintiff's Residual Functional Capacity

The ALJ determined that Plaintiff had the RFC to perform light work, with certain additional limitations that do not relate to Plaintiff's ability to sit, walk or stand. (R. 18-19.) The Social Security regulations define light work as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.

20 §§ C.F.R. 404.1567(b) and 416.967(b). Plaintiff argues that the ALJ's RFC determination conflicted with Plaintiff's lower extremity limitations. (Pl.'s Mem. at 11-12.) We agree.

The ALJ reviewed Plaintiff's neuro-oncology treatment notes and found that clinical exam findings throughout 2016 "consistently" documented neuropathy symptoms in Plaintiff's feet, including decreased sensation in his feet and decreased proprioception in his big toes. (R. 21-22.) In addition, the ALJ noted that Plaintiff experienced swelling in his feet if he sat for prolonged periods. (R. 22.) Based on this evidence and the ALJ's assumption that light work "would likely result in more position changes throughout the day between sitting, standing and walking," the ALJ determined that light work, rather than sedentary work, was "appropriate" for Plaintiff. (R. 22-23.)

The ALJ's decision to limit Plaintiff to light work was inconsistent with the evidence and the ALJ's findings as to Plaintiff's neuropathy symptoms in his feet. First, the ALJ's stated reason for limiting Plaintiff to light rather than sedentary work -- Plaintiff's complaints of swelling in his feet if he sat for prolonged periods -- is inconsistent with the Social Security regulations, which state that an individual who performs light work must be able to sit "most of the time." 20 §§ C.F.R. 404.1567(b) and 416.967(b). Second, the other requirement for an individual who performs light work -- that they be able to perform "a good deal of walking or standing" -- is inconsistent with the ALJ's findings that Plaintiff consistently complained of neuropathy pain and decreased sensation in his legs and feet throughout 2016, which worsened when he was on his feet for prolonged periods, and that medical exams documented the decreased sensation. (R. 21-22.) Third, the ALJ's assumption that light work would allow Plaintiff to change positions throughout the day is not grounded in the Social Security regulations. The definition of light work does not provide for changing positions. If the ALJ intended to limit Plaintiff to jobs that allowed for changing positions, he should have included additional limitations in the RFC or in the hypotheticals to the VE that limited Plaintiff to jobs that allowed him to change positions throughout the day. For these reasons, the ALJ's decision to limit Plaintiff to light work was not supported by substantial evidence.

## B. Step Four

Although the Court must remand for the reasons set forth above, the Court writes further to note errors in the ALJ's Step Four analysis that he should address on remand.[6] The ALJ's Step Four determination -- that Plaintiff could sustain his past work (both as actually and generally

---

[6]The Government does not contest that the ALJ erred in his Step Four analysis; instead the Government argued that "any error made by the ALJ at Step Four is harmless because of the Step Five finding." (D.E. 25: Gov.'s Mem. at 12-13.) The Court does not address the ALJ's Step Five finding here because remand is necessary for the reasons discussed above.

performed) -- was inconsistent with the ALJ's own analysis that limited Plaintiff to light work. At Step Four, "[a] claimant is not disabled if he can do his past relevant work either in the manner he performed it before the impairment or in the manner it is generally performed in the national economy." *Ray v. Berryhill*, 915 F.3d 486, 491 (7th Cir. 2019). Here, both the ALJ and the VE described Plaintiff's past work, both as he actually performed it and as it is generally performed, as sedentary. (R. 23, 65-67.) However, the ALJ found that sedentary work was not an appropriate RFC for Plaintiff "based on the claimant's allegations that he experienced swelling in his feet if he sat for prolonged periods." (R. 22.) The ALJ's determination that Plaintiff could perform his past work, which was sedentary, while limiting Plaintiff's RFC to light work due to his difficulties sitting, was inconsistent. *See Getch v. Astrue*, 539 F.3d 473, 480-82 (7th Cir. 2008) (holding that remand was necessary where the ALJ concluded that the claimant could perform his past relevant work but failed to adequately identify the duties of the prior job and assess the claimant's ability to perform those tasks).[7] On remand, the ALJ should avoid such inconsistencies.

---

[7]Plaintiff also contends that his description of his former job does not match the title -- systems analyst -- proposed by the VE and adopted by the ALJ. (Pl.'s Mem. at 7.) This argument is a stretch considering that at the hearing, Plaintiff himself testified that he had difficulty correlating his former job titles to descriptions provided for those job titles on internet job search sites. (R. 39.) Regardless, the Court has reviewed the DOT definition of systems analyst and Plaintiff's description of his past work, and the Court does not see the conflict Plaintiff alleges. Contrary to Plaintiff's allegation, the DOT's description of the job appears to require mostly sitting and typing, much like Plaintiff's description of his former work. *See* DOT 030.167-014 (stating that a systems analyst performs tasks such as analyzing data improve computer systems, documenting program functions and development, reviewing computer system capabilities, studying information processing systems, and upgrading systems).

## CONCLUSION

For the foregoing reasons, the Court grants Plaintiff's motion for remand (D.E. 14) and denies the Commissioner's motion to affirm (D.E. 24). The Court remands the case for further proceedings consistent with this opinion. The case is terminated.

ENTER:

**GABRIEL A. FUENTES**
**United States Magistrate Judge**

**DATED: November 5, 2019**